United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MYCONE DENTAL SUPPLY CO INC,     No. C-12-00747-RS (DMR)

    Plaintiff(s),     **ORDER RE: JOINT DISCOVERY LETTER [DOCKET NO. 139]**

    v.

CREATIVE NAIL DESIGN INC,

    Defendant(s).
_____/

Before the court is a joint discovery letter ("Letter") filed by Plaintiff Mycone Dental Supply Co., Inc. dba Keystone Research & Pharmaceutical ("Keystone") and third party Gel Products, Inc. ("Gel"). [Docket No. 139.] Keystone subpoenaed Gel seeking documents, which Gel provided. Keystone also conducted a deposition of Gel pursuant to Federal Rule of Civil Procedure 30(b)(6), which occurred on April 30, 2013. This dispute concerns Gel's "clawback" request, sent by letter to Keystone and Defendant Creative Nail Design Inc. ("CND") on June 18, 2013, that the parties return certain documents that Gel contends are privileged and inadvertently produced. The court conducted a hearing on September 4, 2013. For the reasons stated below, Gel's request is denied.

## I. BACKGROUND

Gel is a corporation owned and operated by Sarah Peterson and Pam Lilley. In 2001, Gel signed a license and development agreement with CND. Gel's work under that agreement led to the development and introduction of several commercial nail polish products for CND. In October

2004, U.S. Patent No. 6,803,394 was issued to Peterson and Lilley, with Gel named as the assignee. In 2010, Gel and CND entered into an agreement wherein Gel assigned ownership of the patent to CND, and in turn CND granted Gel an exclusive license on most but not all of the claims in the '394 patent.

In mid-March 2013, Keystone served subpoenas on Gel and Gel's patent lawyer, Deborah Peacock at the law firm of Peacock Myers. On April 22, 2013, Gel's lawyer in this litigation, Lewis Hoffman, sent an email to Keystone describing privileged material that Gel would *not* be producing, including "[a]ttorney-client communications representing transmittal of thoughts (including drafts) exchanged between Gel (through its two principal officers) and Peacock during the period of patent prosecution)." That email specifically noted that Gel *would* be producing "simple transmittal or notice letters." On April 23, 2013, Hoffman produced 35,000 pages from Gel's files and 4,000 pages (in 254 documents) from the files of Peacock Myers. The production includes nine letters, totaling approximately 58 pages, that are the subject of this discovery dispute. The parties describe these letters as "transmittal letters" from Peacock Myers to Gel that informed Gel of its general duty of candor, and urged compliance with that duty. According to Gel, the letters "were each sent in different patent applications, at different times, and provide specific legal advice regarding disclosure duty as to the specific patent applications at issue." Letter at 2. The same letters had apparently been delivered by Gel to CND in January 2011—that is, long before the current lawsuit was filed—when Hoffman instructed Peacock Myers to send "transmittal letters" to CND. Gel claims that it approved Hoffman's instruction to Peacock Myers, but Gel did not realize that Peacock Myers had sent the disputed letters to CND until April 2013, when it was collecting documents for the production currently at issue.

Gel designated Pam Lilley as the "person most knowledgeable" to answer questions at the Rule 30(b)(6) deposition, held on April 30, 2013. During that deposition, Keystone examined Lilley using one of the letters at issue. Hoffman objected that he believed that some of the sentences in that letter were privileged, but agreed to permit Keystone to question Lilley, provided that Keystone agree that Gel was not waiving its privilege assertion or its clawback rights under the protective order. Keystone agreed.

Seven weeks after the deposition, on June 18, Hoffman wrote Keystone a letter demanding that Keystone return or destroy the 58 pages over which Gel asserts a claim of privilege.

## II. DISCUSSION

The parties to the litigation have entered into a protective order which includes a provision governing the inadvertent production of privileged material:

> Counsel shall exert their best efforts to identify documents or material protected by the attorney-client privilege or the work-product doctrine prior to the disclosure of any such documents or material. If, however, a party unintentionally discloses documents or material that is privileged the party shall, ***within five (5) business days upon discovery of the disclosure***, so advise the Receiving Party in writing, request the documents or material be returned, and attach a privilege log entry pertaining to the documents or material that is privileged or otherwise immune from discovery. If that request is made and the privilege log provided, no party to this action shall thereafter assert that the disclosure waived any privilege or immunity. It is further agreed that the Receiving Party will return or destroy the inadvertently produced documents or material, and all copies and derivations, within five (5) business days of the Receiving Party's receipt of a written request for the return of the documents or material. The Receiving Party having returned or destroyed the inadvertently produced documents or material may thereafter seek production of the documents or material in accordance with the Federal Rules of Civil Procedure, but cannot assert that the privilege has been waived due to the unintentional disclosure. These procedures are not intended to in any way limit the right of a party to argue under Federal Rule of Evidence 502 or any other law that any inadvertent production did not constitute a waiver.

*See* Docket No. 93 at ¶ 11 (emphasis added). Gel, as a third party, did not stipulate to this protective order. However, at the hearing, the parties and Gel all agreed that they had been working with the understanding that the protective order applies to Gel in this situation.

In addition, Federal Rule of Evidence 502(b) provides, "When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."[1] Keystone argues that Gel's clawback of the disputed documents is inappropriate because: (1) the

---

[1] Under Federal Rule of Civil Procedure 26(b)(5)(B), "[i]f information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved."

3

documents are not privileged; (2) any privilege was waived when Gel disclosed the documents to CND in January 2011; (3) the disclosure was not inadvertent; and (4) Gel delayed too long to recall the documents.

The court denies Gel's clawback request because Gel did not promptly take reasonable steps to rectify the error.[2] Gel took 49 days to send a clawback letter after it discovered the disclosure of at least one of the disputed documents during the Rule 30(b)(6) deposition. Gel has offered a sequence of excuses for this delay, including that Gel sought a second opinion from another attorney, that Gel's 30(b)(6) witness became less available even as she insisted on reviewing the entire production document by document, that Hoffman, one attorney in a two-person firm, was on vacation or busy with other matters, and that no other deadlines were upcoming in this litigation. Letter at 5. These excuses do not justify Gel's seven-week delay in sending a recall letter—at the least, Gel should have recalled the document that was used in the deposition immediately after the deposition and then conducted a more thorough and timely investigation into the rest of the production after the initial clawback request. *See, e.g.*, *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96-CV-7590-DAB-JCF, 1997 WL 736726 at *6 (S.D.N.Y. Nov. 26, 1997) (no inordinate delay where producing party's counsel wrote receiving party's counsel one day after learning of the error to demand return of the documents, then waited 11 days to begin comprehensive review to uncover other inadvertently produced privileged material, and sent the receiving party what they believed was a comprehensive list of inadvertently produced documents eighteen days later). *Compare Skansgaard v. Bank of Am., N.A.*, C11-0988 RJB, 2013 WL 828210 at *3 (W.D. Wash. Mar. 6, 2013) (two-month delay between deposition in which disputed document was used and clawback request was unreasonable; "[T]he courts have emphasized that clawback requests should be made immediately, with delays of even a few weeks determined to be too long, much less nearly two months) (citing *Atronic Int'l, CmbH v. SAI Semispecialists of Am., Inc.,* 232

---

[2] Because the court determines that Gel's clawback request is untimely, it does not reach the other issues raised in this dispute: whether the disputed portions of the transmittal letters are privileged, whether Gel waived any assertion of privilege by disclosing the letters to CND, whether that disclosure to CND did not act as a waiver of privilege because of the common interest doctrine, or whether Gel's disclosure was inadvertent.

1  F.R.D. 160, 165 (E.D.N.Y.2005) (six day delay after discovery of disclosure before clawback
2  request weighed in favor of finding of waiver); *S.E.C. v. Cassano,* 189 F.R.D. 83, 85-86 (S.D.N.Y.
3  1999) (twelve day delay considered too long); *Harmony Gold,* 169 F.R.D. 113, 117-18 (N.D.Ill.
4  1996) (two week delay considered "lax" effort)).

5       Gel argues that the delay should be measured starting from when counsel finally confirmed,
6  after investigation, that the documents were privileged, not from the date of Lilley's deposition.
7  However, the cases cited by Gel for this argument are distinguishable. In *Rodriguez-Monguio v.*
8  *Ohio State Univ.*, the producing party's counsel clawed the privileged document back *immediately*
9  after learning of that a "clearly" attorney-client privileged document had been produced. No. 2:08-
10 CV-00139, 2009 WL 1575277 (S.D. Ohio June 3, 2009) (receiving party's counsel had referred to
11 the inadvertently produced email in a five-page single-spaced letter to producing party's counsel on
12 January 22, but producing party's counsel did not carefully review that letter until three weeks later
13 and only then realized that an email that was "clearly" privileged had been inadvertently produced,
14 and immediately requested the email be clawed back). In *Valentin v. Bank of New York Mellon*
15 *Corp.*, the producing party took approximately 25 days to investigate a privilege issue that was not
16 immediately obvious and required fact-gathering from percipient witnesses. No. 09-cv-9448-GBD-
17 JCF, 2011 WL 1466122 at *3 (S.D.N.Y. Apr. 14, 2011). The court found there was no undue delay
18 where the producing party first focused its attention on a document with handwritten notes on
19 February 3, conferred with human resources, determined on February 18 that the notes had been
20 written by former in-house counsel, verified on February 22 that the notes had been written *after* the
21 plaintiff served a demand letter and were therefore privileged, and then sought return of the
22 documents on February 28. Here, Gel took 45 days to research its assertion of privilege before
23 sending its clawback letter. This research covered three or four essentially identical sentences in
24 nine essentially identical form transmittal letters, the author of which was obvious on the face of the
25 letters. Under these circumstances, Gel's delay neither meets the requirements of the protective
26 order nor the requirement under Rule 502(b) that the producing party take "reasonable steps to
27 rectify the error" of the inadvertent disclosure.
28 //

//

### III. CONCLUSION

For the reasons stated above, Gel's clawback request is **denied**.

IT IS SO ORDERED.

Dated: September 4, 2013

DONNA M. RYU
United States Magistrate Judge