United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MYCONE DENTAL SUPPLY CO INC,

    Plaintiff(s),

    v.

CREATIVE NAIL DESIGN INC,

    Defendant(s).
_____/

No. C-12-00747-RS (DMR)

**ORDER RE: JOINT DISCOVERY LETTER [DOCKET NO. 179]**

    Before the court is a joint discovery letter filed by Defendant Creative Nail Design ("CND") and joined parties Young Nails, Inc., Cacee, Inc., and Nail Systems International (collectively, "Joined Parties"). [Docket No. 179.] CND seeks additional financial information from the Joined Parties. The court conducted a hearing on January 23, 2014. For the reasons stated below and at the hearing, CND's request is **granted in part and denied in part**.

## I. BACKGROUND

    CND is a business involved in the marketing and sales of nail coating products. Complaint [Docket No. 1] at ¶ 6. CND holds a license to some of the claims of U.S. Patent No. 6,803,394. On December 15, 2012, Plaintiff Mycone Dental Supply Co., Inc. d/b/a Keystone Research & Pharmaceutical ("Keystone") filed this lawsuit against CND for declaratory judgment that the radiation-curable nail products that Keystone sells to its customers do not infringe certain claims of the '394 patent, and that those claims of the '394 patent are invalid. *Id.* at ¶¶ 31-39. The Joined

Parties allegedly sold the Keystone products that CND claims infringed the '394 patent. *See id.* at 18-21 (identifying the Joined Parties as "Keystone's customers"); CND Answer [Docket No. 8] at ¶ 14. CND has filed counterclaims against Keystone and the Joined Parties for infringement of the '394 patent, and seeks damages and injunctive relief. *See* CND Answer at ¶¶ 32-55.

In discovery requests served in August 2012 and May 2013, CND requested financial information from the Joined Parties relating to annual and monthly sales of certain products, including the dollar amounts, unit volumes, customers, products sold, profits, and revenues, as well as documents relating to pricing decisions. *See* Letter Ex. A (Joined Parties' responses to CND's Requests for Production of Documents); Letter at 4.

On March 18, 2013, all parties entered into a stipulated order governing e-discovery. [Docket No. 117.] That stipulation states that "[t]he parties also agree to the initial production of summary financial materials in lieu of all invoices, receipts, purchase orders, etc." Docket No. 117 at ¶ G. In May 2013, the parties met and conferred and agreed that the financial summaries should include, on a quarterly basis, (1) quantities of the accused products sold; (2) revenues from such sales; and (3) the costs associated with such sales. In June 2013, the Joined Parties produced the summary financial information.

On August 15, 2013, CND asked the Joined Parties to produce purchase orders and invoices for sales of their accused products covering a period of approximately three years (November 2010 through August 2013). The parties met and conferred regarding CND's request several times, from August 27 until September 20, 2013. The Joined Parties did not agree to produce the requested purchase orders and invoices. CND did not press the issue again until November 25, 2013, after the close of fact discovery and after the parties had already exchanged opening expert reports,[1] when it again requested purchase orders and invoices from the Joined Parties. In lieu of the production of individual purchase orders and invoices, CND offered to accept additional financial information

---

[1] The close of fact discovery was extended thrice pursuant to the stipulation of the parties, from June 28, 2013 until November 22, 2013. [Docket Nos. 75, 120, 131, 170.] The parties also stipulated to the extend the deadline for serving opening expert reports to November 22, 2013, and on that date served opening expert reports. Among these reports was CND's damages expert report. Letter at 6. Rebuttal expert reports were due on January 15, 2014, and reply expert reports on January 31, 2014. [Docket No. 171.]

2

from the Joined Parties that included, for each sale by each of the Joined Parties over a three year period, (1) the name of the customer, (2) the product, (3) the quantity of the product purchased, (4) the price, (5) the cost-of-goods sold allocated to that product, (6) the gross profit on the product, and (7) the gross margin on the product. The Joined Parties refused to produce this information. Finally, CND suggested that the Joined Parties give CND access to the underlying data and/or database(s) so that CND could generate the financial summaries by itself—a proposal that the Joined Parties have also rejected. Letter at 2.

On November 29, 2013, CND timely[2] filed an ex parte discovery letter seeking an order from this court compelling the Joined Parties to produce the requested summary sales data.

## II. DISCUSSION

Although CND characterizes its request as seeking "summary" financial information, in reality, CND wants detailed sales data. Specifically, CND seeks from each of the Joined Parties an accounting of customers, product sold, sale price, and units sold by month from 2011 until the end of 2013. CND avers that it and the Joined Parties all sell nail coating products and "almost certainly" target the same customers. Letter at 3. As such, the requested information is relevant to CND's lost profits damages analysis, in which its expert must determine how many units are being diverted away from CND and to the Joined Parties as a result of the alleged infringement. According to CND, the additional detail in the requested summary financial data will improve CND's lost profits analysis because CND will be able to more accurately determine lost profits from customers for whom it actually competes, rather from all customers of the Joined Parties. Letter at 4.

The court denies CND's request for additional detailed financial data because at this advanced stage in the litigation, the burden of obtaining the information sought outweighs its likely benefit. The parties met and conferred in May 2013 and agreed upon the content of the Joined Parties' initial production of sales data. In July and August 2013, CND deposed four Rule 30(b)(6)

---

[2] Pursuant to Civil Local Rule 37-3, motions to compel discovery must be filed no more than seven days after the discovery cut-off. CND's ex parte letter, filed on November 29, 2013, was timely filed. [Docket No. 174.] The court denied the ex parte letter and ordered the parties to continue to meet and confer, and gave leave to the parties to file a joint discovery letter if their efforts to meet and confer did not resolve the dispute. [Docket No. 175.] The parties subsequently filed the letter that is the subject of this order on December 9, 2013.

3

witnesses from the Joined Parties, including corporate representatives who testified about their company's finances and, specifically, the summary financial information produced pursuant to the parties' agreement. At the hearing, CND's counsel admitted that, as a result of this deposition testimony, CND knew that the Joined Parties were able to access more financial data than they had previously produced, yet CND waited until late November to file an *ex parte* motion to compel the production of that data. The *ex parte* motion was technically timely under the local rules, but CND has not offered any persuasive explanation for why it waited so long to raise the issue with the Joined Parties or with the court. CND averred at the hearing that if this court ordered the Joined Parties to produce the requested information, CND would then move the district judge to permit CND to supplement its expert's report with the requested data. Such an outcome would disrupt the expert discovery schedule and cause undue burden on the Joined Parties. CND has provided no excuse for waiting until after the disclosure of expert reports to compel information relevant to its expert's damage analysis. It would be unduly burdensome to compel the Joined Parties to produce the additional information and also expend resources responding to a supplemental expert analysis that could and should have been completed in the first instance. Moreover, counsel explained at the hearing that the Joined Parties are small businesses that do not keep electronic records of their sales information, so that producing the requested information would require a burdensome and time-consuming search of "hardcopy" sales documents.

CND's counsel argued at the hearing that the requested financial data was relevant not only to its expert's damages calculations but also to discover the names of the companies that purchased the accused products from the Joined Parties. The court notes that CND propounded timely discovery requests seeking the names of the Joined Parties' customers. *See, e.g.*, Letter Ex. A [Docket 179-1 at 13] (Cacee's Responses to CND's RFPs No. 59, which seeks "documents sufficient to show all Cacee's sales . . . broken down by customer"). The Joined Parties did not dispute the relevance of customer names, and conceded that it would not be burdensome to produce a list of customers for each Joined Party. Accordingly, by **February 6, 2014,** each Joined Party shall produce a list of all customers to whom it sold the accused products between 2011 and 2013.

## III. CONCLUSION

For the reasons stated above, CND's request is **granted in part and denied in part**.

IT IS SO ORDERED.

Dated: January 28, 2014



_____
DONNA M. Ryu
United States Magistrate Judge